UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

CLAUD R. KOERBER,

                    Petitioner,

        -against-

UNITED STATES OF AMERICA,

                    Respondent.

**MEMORANDUM AND ORDER**
Case No. 2:23-CV-00737 (FB)

*Appearances:*
*For the Petitioner:*
CLAUD R. KOERBER, *pro se*
16324-081
Federal Correctional Institution
Englewood - Satellite Camp
9595 W. Quincy Ave.
Littleton, CO 80123.

*For the Respondent:*
TRINA A. HIGGINS
United States Attorney
ALLISON H. BEHRENS
Assistant United States Attorney
District of Utah
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111

**BLOCK, Senior District Judge:**

Claud R. Koerber moves *pro se* to vacate his sentence pursuant to 28 U.S.C.

§ 2255. For the following reasons, Koerber's motion is DENIED.

## I.

This proceeding is the latest development in a long-running case. The Court

assumes the parties are familiar with the facts, which the Tenth Circuit laid out in

detail when addressing Koerber's direct appeal in *United States v. Koerber*, 10

F.4th 1083, 1093–99 (10th Cir. 2021). Accordingly, the Court only briefly recounts

the background to this motion.

In the 2000s, Koerber solicited funds from investors which, he claimed, would be invested in real estate and generate returns to be passed to the investors. *Id*. at 1094. Koerber, however, only invested about 21% of investors' funds in real estate; he used 47% of incoming funds to pay back earlier investors, 31% on personal consumption and other pet projects (such as luxury cars and a fast-food restaurant); and 1% on educational endeavors. *Id*.

Koerber was indicted in 2009, and a superseding indictment came in 2011, charging him with various counts of fraud, money laundering, and tax evasion. *Id*. at 1095. Throughout this initial proceeding, *Koerber I*, Koerber was represented by a private attorney, Marcus Mumford. Pet'r's Mem. at 22. Koerber, however, eventually ran low on funds, and the court appointed Mumford to continue representing him at the government's expense. ECF No. 19 (*Koerber I*); Pet'r's Mem. at 22. *Koerber I* did not go to trial; it ended when the charges were dismissed on Speedy Trial Act grounds, without prejudice. *Id*. at 1095–97.

The government reindicted Koerber in 2017, beginning *Koerber II*, which consisted of two trials. *Koerber*, 10 F.4th at 1097. At the outset of the first trial, the court denied Koerber's request that Mumford be reappointed as his counsel, once again at the government's expense; consequently, Mumford represented Koerber pro bono. ECF No. 61 at 11–12 (*Koerber II*); ECF No. 162 (*Koerber II*).

The first trial ended in a hung jury and the court declared a mistrial. *Koerber*, 10 F.4th at 1097. Subsequently, the entire District Court for the District of Utah suspended Mumford from appearing before it. Pet'r's Mem. at 33–34; Resp't's Mem. at 5; ECF No. 315 (*Koerber II*). Accordingly, for Koerber's second trial, he was appointed a team of defense attorneys from the Federal Defender's Office, led by Kathy Nester. ECF No. 322 (*Koerber II*). In the interim, the undersigned was appointed to preside at Koerber's second trial. It ended in a conviction on 16 out of 18 counts. *Koerber*, 10 F.4th at 1099.

Koerber appealed to the Tenth Circuit, raising various grounds for relief. *Id*. The Court of Appeals denied his claims and affirmed his sentence. *Id*. at 1120. Koerber unsuccessfully petitioned the Supreme Court for certiorari. *Koerber v. United States*, 143 S. Ct. 326 (2022).

Koerber is currently serving a 170-month prison sentence followed by a three-year term of supervised release.

## II.

28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

3

28 U.S.C. § 2255(a).

A 2255 motion, however, is not a substitute for direct appeal. *United States*

*v. Frady*, 456 U.S. 152, 165 (1982). As the Tenth Circuit has explained:

> Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal. A defendant's failure to present an issue on direct appeal bars him from raising the issue in his 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.

*United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993).[1]

Koerber raises ten grounds for relief, which the Court addresses in turn.[2]

Ground 1: Sixth Amendment Violation Based on Denial of Choice of

Counsel

Koerber contends that his Sixth Amendment rights were violated when he

was denied his choice of counsel, first when the *Koerber II* court declined to

appoint Mumford as Koerber's counsel,[3] and second when the court suspended

---

[1] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

[2] Because Koerber proceeds pro se, the court holds his pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will not, however, "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3] The court explained that appointing a private attorney to represent an indigent defendant is the exception, only done in rare circumstances where, for example, a defendant needs an attorney in the middle of a case and the court wishes to avoid the time and expense of getting a new attorney up to speed. The default is for an indigent defendant to receive appointed counsel from the public

Mumford following the first trial and ordered him to withdraw from representing Koerber.

Koerber failed to raise this issue on direct appeal, therefore, he is procedurally barred from now raising it unless he can show cause and prejudice or that a fundamental miscarriage of justice will occur if it is not addressed. *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993); *United States v. Laskey*, No. 25-5087, 2025 U.S. App. LEXIS 22039, at *5 (10th Cir. Aug. 27, 2025) (Defendant's "failure to raise the choice-of-counsel issue on direct appeal likely bars him from raising that issue now in his § 2255 motion."). Koerber cannot show cause because his claims are without merit. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).

First, the court's decision to not reappoint Mumford as counsel in *Koerber II* was not a violation of Koerber's Sixth Amendment rights because Koerber did not have a right to have Mumford appointed. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them.").

---

defender's office or the Criminal Justice Act panel and, because *Koerber II* was a new case, the above-factors no longer supported appointing Mumford. ECF No. 61 at 11–12 (*Koerber II*).

Second, Koerber's Sixth Amendment rights were not violated when Mumford was suspended. The parties seem to agree that Mumford's suspension was the result of an ethical investigation by the court concerning allegedly false statements made by Mumford. Pet'r's Mem. at 48–50, Resp't's Mem. at 17–18. A federal court has "the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991). This includes the power to suspend an attorney. *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016). The right to counsel of one's choice includes an "implied reservation that counsel . . . be an attorney in good standing and licensed to practice," *Cantor v. Supreme Court of Pa.*, 353 F. Supp. 1307, 1319 (E.D. Pa. 1973), and the suspension of a defendant's attorney is not a per se violation of the right to counsel. *See Kieser v. New York*, 56 F.3d 16, 17 (2d Cir. 1995). Accordingly, the denial of Koerber's choice of counsel when Mumford was suspended from practice was not a violation of Koerber's Sixth Amendment right to counsel.

<u>Ground 2: Sixth Amendment Violation Based on Defense Counsel's Alleged Conflicts of Interest</u>

Koerber contends that his Sixth Amendment right to counsel was violated because he alleges that his defense counsel, Kathey Nester, labored under an actual conflict of interest based on her "friendship" with the prosecuting attorney,

6

Assistant U.S. Attorney Tyler Murray ("AUSA Murray").[4] Koerber alleges that, due to her supposed friendship with AUSA Murray, Nester failed to pursue the issue of suborned perjury at trial.

Because Koerber did not raise this issue at trial, he "must demonstrate that an actual conflict adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 466 U.S. 335, 348 (1980). Whatever Koerber's complaints about the zealousness of Nester's representation, there is no indication that an actual conflict of interest existed or that Nester's representation was adversely affected. Although Koerber contends that his defense team did not adequately pursue the issue of suborned perjury, his lawyers filed a motion explicitly accusing the prosecutors of suborning perjury and requesting a mistrial just a few days after the witness's purported perjury. ECF No. 508 (*Koerber II*). Even if Koerber's factual allegations were sufficient to establish a conflict, he fails to establish that his defense counsel's performance was adversely affected.

Koerber also contends that Nester labored under an actual conflict of interest based on her office's prior representation of Koerber's former secretary and

---

[4] This claim is not procedurally defaulted because a defense counsel who labored under conflicts of interest may not have provided the effective assistance guaranteed by the Sixth Amendment, *see United States v. Flood*, 713 F.3d 1281, 1283 (10th Cir. 2013), and claims of ineffective assistance of counsel are not subject to the procedural bar. *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693, 155 L. Ed. 2d 714 (2003).

bookkeeper, Rachelle Taylor. Robert Hunt, one of the attorney's on Koerber's defense team, represented Taylor at an evidentiary hearing in 2010 for the limited purpose of determining whether her possession of a letter written by Koerber affected Koerber's attorney-client privilege regarding that letter. ECF No. 94 (*Koerber I*).

Koerber's argument is without merit because Koerber waived this conflict voluntarily, knowingly, and intelligently. *Brady v. United States*, 397 U.S. 742, 748 (1970). Koerber waived this conflict verbally at a status conference, where he stated, regarding Hunt's prior representation of Taylor, "I don't see any concern and I am willing to waive based on that." ECF No. 402 at 7–13 (*Koerber II*). Koerber affirmed his waiver in a written declaration he submitted to the court, in which he stated "My attorneys and I have fully discussed the potential conflicts that may arise due to this prior representation of a witness. I voluntarily agree to waive any potential conflict arising from Mr. Hunt's prior representation of Rachelle Taylor and have no objection to him continuing as my counsel in this case." ECF No. 325 (*Koerber II*).

Koerber alleges that this waiver was not knowing and that his defense attorneys declined to pursue an advice-of-counsel defense because of the past representation of Taylor. Koerber, however, does not explain how the past representation of Taylor, who was not called as a witness at either of the trials, and

8

whose representation concerned a single letter in a massive case, would have presented such a conflict as to preclude an entire defense strategy. Koerber knew that one of his attorneys previously represented Taylor and he knew that it specifically concerned the letter he wrote. ECF No. 402 at 11 (*Koerber II*). Koerber's allegations are not credible and fail to establish that his waiver was not knowing. "An ineffectiveness-due-to-conflict claim is waived if [the] defendant consciously chose to proceed with trial counsel, despite a known conflict to which the defendant could have objected but chose to disregard." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). Because he waived his right to conflict-free counsel over Hunt's prior representation of Taylor, Koerber may not now contend that his attorneys were compromised by that very representation.

Ground 3: Ineffective Assistance of Counsel Based on Mishandling of Koerber's Right to Testify

Koerber's counsel, Kathy Nester, made the following comments in her opening statement:

> **Mr. Koerber has waited ten years to tell the jury the whole truth**, not just conclusions that are based on partial truths and inaccurate data or pulling little snippets of conversations out of context. . . .
>
> You're going to hear the government's evidence for a couple of weeks before we even get to start telling you our evidence. So we're going to ask you, we're going to entreat you to keep an open mind. I know that's going to be hard over two weeks, but we're asking you to do that, because **you're going to have to sit there and wait patiently after 12**

**years for two more weeks before Mr. Koerber can tell you the whole truth**. . . .

Finally, the government is going to say Mr. Koerber engaged in a scheme to defraud people. **Mr. Koerber is going to stand here and shout it to the rooftops that he never defrauded anyone, that he was open, that he was honest, and you're going to hear from his investors that will back that up** and you're going to hear that throughout the trial. . . .

**He [Koerber] is going to tell you** that he wishes that he could have anticipated that crash, that he wishes that he would have known the crash was going to last as long as it did and that he could have liquidated the properties faster.

**He is going to tell you** about the pain that his investors felt he felt too, and he felt their pain very, very intently and worked hard to fix it until he just couldn't do it anymore.

ECF No. 569 at 38, 42, 68–69 (*Koerber II*) (emphases added).

Despite these statements, however, it appears that Nester was not certain that she wanted to have Koerber testify; she was apparently concerned about the possibility of damaging cross-examination due to the government's access to Koerber's testimony from the first trial. Pet'r's Ex. 1 at 2. Koerber, on Nester's advice, ultimately decided not to testify. Nester told the court that, "after careful consideration, Mr. Koerber trusts the jury to take the case at this point and he elects to exercise his right not to testify." ECF No. 577 at 2031 (*Koerber II*). The Court then instructed the jury that they could not hold the fact that Koerber declined to testify against him, stating:

All right, folks, I initially thought we would be spending the rest of the day hearing from Mr. Koerber. But bear in mind, the fact that I did tell

10

you – or counsel did indicate to me that he was going to testify and that now we learn for the first time that he's not going to testify, you cannot hold that against him. That's his absolute right, and the defendant has the right to reflect upon it, to have second thoughts about it. All of that is irrelevant. I don't want you to hold the fact that he indicated that he would testify and now he decided at the eleventh hour not to testify, and that if you were to infer anything from that whatsoever, it would be wrong to do that. So just be very clear about that. You cannot hold that against him at all nor infer anything whatsoever to the fact that he's exercised his constitutional right not to testify…. But it's important that you understand that.

ECF No. 577 at 2031-32 (*Koerber II*).

Out of the presence of the jury, Nester requested that the Court engage in a colloquy with Mr. Koerber on the record to make sure that Koerber understood his right to testify and his decision not to exercise that right. *Id.* at p. 2075. This exchange proceeded as follows:

COURT: Let me make sure of that because a lot of times we get, you know, these 2255 collateral motions, right? And it's very good to make sure that Mr. Koerber has consulted with counsel, that he understands his rights, and that he freely, willfully, and consciously wishes not to testify, and he understands he has the absolute right to do so.

So I want to make sure, Mr. Koerber, that you are clear about that and that you do choose not to testify. You have your chance to speak for the first time.

KOERBER: Thank you, Your Honor. I did testify at the last trial, and it was a hard decision. But I did make this decision in consultation with my attorney and I'm confident that I do not want to testify in this trial.

*Id.*

Koerber contends that he received ineffective assistance of counsel because Nester promised that he would testify and then broke that promise. The Court is not persuaded.

The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). To succeed on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was deficient; and (2) the defendant was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Koerber primarily relies on two cases for the contention that a broken promise that the defendant will testify can amount to ineffective assistance of counsel: *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002) and *United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003).

In *Ouber*, 293 F.3d at 22, the defendant's lawyer promised in his opening statement that the defendant, Ouber, would testify. Defense counsel, however, declined to call Ouber or, indeed, any other fact witnesses whatsoever, before resting. *Id*. at 23. The First Circuit held that counsel's broken promise constituted deficient performance under *Strickland* and that Ouber was prejudiced by this. *Id*. at 32.

*Hampton*, 347 F.3d at 257–60, which relied on *Ouber*, found a *Strickland* violation for similar reasons. There, defense counsel similarly promised that the

defendant would testify but then failed to call the defendant. *Id*. at 226. The Seventh Circuit, however, concluded that the broken promise to have the defendant testify, on its own, would not have been so prejudicial as to justify relief. *Id* at 260. Only when paired with defense counsel's numerous other errors, including the failure to investigate witnesses and put on other evidence, did the court conclude that the defendant had established a *Strickland* violation. *Id*.

Assuming without deciding that Nester's remarks constituted a promise that Koerber would testify (a characterization the government contests), and that Nester broke that promise when Koerber declined to testify, the Court nevertheless concludes that Koerber did not receive ineffective assistance of counsel for three primary reasons.

First, no Tenth Circuit court has yet followed *Ouber* and many other courts have taken pains to distinguish it. *See, e.g., Bahtuoh v. Smith*, 855 F.3d 868, 872 (8th Cir. 2017) ("courts have differed on whether it is reasonable to advise a defendant not to testify after having promised the testimony in opening statements"); *Thompson v. Rapelje*, 839 F.3d 481, 483 (6th Cir. 2016) (distinguishing *Ouber* on various grounds); *Mann v. Ryan*, 828 F.3d 1143 (9th Cir. 2016) (finding no promise); *Barrow v. Uchtman*, 398 F.3d 597 (7th Cir. 2005) (finding no promise); *Mavashev v. United States*, No. 11-CV-3724 (DLI), 2015 U.S. Dist. LEXIS 43034, at *34–35 (E.D.N.Y. Mar. 31, 2015) (noting the "unique

circumstances presented in *Ouber*" and distinguishing from them); *White v. Greene*, No. 05-CV-0545(VEB), 2010 U.S. Dist. LEXIS 51563, at *20 (W.D.N.Y. May 24, 2010) (finding a promise, but distinguishing *Ouber* on other grounds). This Court is reluctant to apply a contested case for the first time here. While breaking a promise that a defendant would testify is perhaps not ideal representation, this Court is not convinced it is necessarily suspect under *Strickland* except in the most extreme circumstances.

Second, *Ouber* and *Hampton* are distinguishable on the facts. In *Ouber*, defense counsel went much further than Nester did in her opening statement. Not only did Ouber's counsel promise that the defendant would testify; he told the jury that the entire case would come down to whether they believed the government's witness or Ouber. *Ouber*, 293 F.3d at 22. The First Circuit explained that "[i]n the course of his opening statement, [defense counsel] promised, over and over, that the petitioner would testify and exhorted the jurors to draw their ultimate conclusions based on her credibility. In fine, *the lawyer structured the entire defense around the prospect of the petitioner's testimony*." *Id.* at 28 (emphasis added).

Nester, in contrast, did not premise the entire defense on Koerber's testimony. Her opening statement was far more equivocal about Koerber's testimony. She told the jury that Koerber would say "he never defrauded anyone"

14

and would "tell you about the pain that his investors felt he felt too." These vague statements are a far cry from telling the jury that the "ultimate decision" in the case would be whether they believed the defendant or the government's witness. *See Ouber*, 293 F.3d at 22.

The differences magnify when contrasting the cases-in-chief. In *Ouber*, the alleged crime was a drug sale, of which there were only two witnesses: the government's witness and the defendant. *Id*. at 21–23. Defense counsel not only declined to call Ouber; he called no fact witnesses whatsoever. *Id*. at 23. In this way, Ouber essentially did not put on a defense or contest the government's version of events. *Id*.

In *Hampton*, 347 F.3d at 224–26, the government's entire case turned on three eyewitnesses and whether they could credibly identify the defendant; no other evidence conclusively linked the defendant to the charged crimes. The defendant identified potential witnesses for his attorney that may have been able to corroborate his account, but defense counsel failed to summon or even interview any of these witnesses. *Id*. at 230. Defense counsel called a single witness, whose entire testimony consisted of merely disputing whether one of the government's several witnesses had, in fact, picked the defendant out of a lineup. *Id*. at 226. The court concluded that "Hampton was prejudiced by his attorney's failure to look for and interview exculpatory occurrence witnesses." *Id*. at 255.

15

The total lack of a defense put on by counsel in *Ouber* and *Hampton*, combined with less than overwhelming evidence of guilt, convinced those courts that counsels' performance was deficient and that the defendants were prejudiced.

In contrast, Koerber's lawyers put on a spirited defense. They called thirteen different witnesses over the course of three days. ECF No. 575, No. 576, No. 577 (*Koerber II*). These included Koerber's business partners, his investors, his tax lawyer, and an accountant who testified as an expert witness, among others. Koerber's theory of the case was that he ran a legitimate business that simply crashed in the wake of the 2008 financial crisis, and his witnesses testified in support of this. ECF No. 569 at 38–39 (*Koerber II*). This is not akin to *Ouber*, where there were only two witnesses to the alleged crime, and in failing to call the defendant, defense counsel failed to put on a defense. Nor is this akin to *Hampton*, where defense counsel entirely failed to research witnesses, pursue leads, or call witnesses to testify. As the *Hampton* court explained, the reason a broken promise can amount to ineffective assistance of counsel is that the "broken promises themselves supplied the jury with reason to believe that there was no evidence contradicting the State's case, and thus to doubt the validity of Hampton's defense." *Hampton*, 347 F.3d at 260. That is not what happened here. Koerber's lawyers called many witnesses, presented his side of the story, and thoroughly tested the government's case.

Koerber's case also differs from *Ouber* and *Hampton* because of the strength of the government's case. The *Ouber* court concluded that the "case was exceedingly close." 293 F.3d at 33. The court in *Hampton*, 347 F.3d at 250, believed the government had a weak case:

> None of the three individuals who identified Hampton as an assailant knew Hampton, and none of those three witnesses had more than a momentary glimpse of the assailant whom they identified as Hampton. They got that look under conditions that were anything but ideal: the attack was chaotic and perpetrated by a large group of people, and the house lights in the Amphitheatre had been dimmed for the concert. Moreover, by their own account, none of the witnesses had, prior to seeing a line-up, provided a physical description of the assailant they identified as Hampton to the authorities.

*Id*. at 25.

In contrast, this court believes the government's case against Koerber was far stronger than in *Ouber* or *Hampton*. The Court agrees with the Tenth Circuit which stated, in addressing Koerber's direct appeal, that "the government admitted overwhelming evidence at trial of Koerber's 'scheme or artifice to defraud.'" *Koerber*, 10 F.4th at 1117.

Third, any possible prejudice from Koerber's decision not to testify was ameliorated by the court's instruction to the jury that they not consider that fact in their deliberations. *Thompson*, 839 F.3d at 485 ("Even considering that prejudice could have arisen from defense counsel's broken promise that Thompson would testify, the court's instruction was ameliorative."). And although judges generally

17

do not have an affirmative duty to inquire into a defendant's decision not to testify, here, the judge's colloquy with Koerber explicitly ensured that his decision not to testify was knowing and intelligent. *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir. 1988) ("[C]ourts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify. Nonetheless, trial courts must take steps to insure that important constitutional rights have been voluntarily and intelligently waived."). *See also United States v. Stark*, 507 F.3d 512, 516 (7th Cir. 2007); *Brown v. Artuz*, 124 F.3d 73 (2d Cir. 1997); *United States v. Pennycooke*, 65 F.3d 9, 12–13 (3d Cir. 1995).

In sum, the Court concludes that even if Nester broke a promise that Koerber would testify, *Ouber* and *Hampton* are distinguishable for the foregoing reasons. Considering the total efforts of Koerber's attorneys, it simply cannot be said that defense counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. And given the strength of the government's case, the court cannot conclude that Koerber has established prejudice.

Ground 4: Ineffective Assistance of Counsel for Mishandling Defense Experts

Koerber contends that counsel was ineffective for mishandling David Hardman's expert testimony and for failing to call Dr. Terry Spencer as an expert witness. The Court concludes that Koerber's claims are without merit.

As to Nester's handling of Hardman, Koerber himself acknowledged that Nester prepared for Hardman's testimony, discussed and reviewed his proposed PowerPoint slides, and obtained his help evaluating the government's expert's exhibits. Pet'r's Mem. at 136. Nester thoroughly questioned Hardman on direct and redirect. ECF No. 576 at 1851–1939, 1937–80 (*Koerber II*). With the benefit of hindsight, Koerber may have complaints with how Hardman's testimony proceeded, but the Court cannot discern anything remotely rising to the level of ineffective assistance of counsel in Nester's handling of Hardman's testimony.

As to the decision not to call Dr. Spencer as an expert witness, "[g]enerally, the decision whether to call a witness rests within the sound discretion of trial counsel." *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998). As Koerber admits, prior to trial he and Nester discussed Dr. Spencer's report and whether to call him, but Nester ultimately decided against it. Pet'r's Mem., at 138. A "strategic choice[]" such as this is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Koerber fails to establish that the choice not to call Dr. Spencer was either objectively unreasonable or prejudicial.

19

Ground 5: Fifth Amendment Due Process Violation on the Basis of

Prosecutors Suborning Perjury

Koerber contends that his Fifth Amendment due process rights were violated

when prosecutors allegedly suborned perjury from witness Austin Westmoreland.

Koerber's claim fails because he is procedurally barred from bringing this

claim in these proceedings. Once again, a § 2255 motion is not a substitute for

direct appeal and is "not available to test the legality of matters which should have

been raised on direct appeal." *Cook*, 997 F.2d at 1320. Koerber could have raised

this issue on appeal; thus, he must show cause and prejudice. *Id*. *See O'Brien v.

United States*, No. 22 C 00083, 2023 U.S. Dist. LEXIS 46309, at *35 (N.D. Ill.

Mar. 20, 2023) (failure to raise issue of suborned perjury on appeal resulted in

procedural default).

Koerber cannot show cause because appellate counsel was not ineffective

for declining to raise this issue on appeal. *Cargle v. Mullin*, 317 F.3d 1196, 1202

(10th Cir. 2003). Koerber's trial counsel raised this issue in a motion for mistrial,

which the court denied. ECF No. 508 (*Koerber II*); ECF No. 573-2 at 48 (*Koerber

II*). In any event, Koerber's appellate counsel was not bound to raise "every

nonfrivolous issue on appeal." *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir.

1995). Appellate counsel could reasonably have determined that raising this issue

20

on appeal was not worthwhile and instead focused on other, more meritorious grounds for appeal.

This claim also fails on the merits. Koerber contends that the government suborned perjury when Westmoreland testified that he gave $25,000 to Koerber when, in fact, Westmoreland gave the money to Paul Bouchard. However, Westmoreland testified that he believed "Mr. Bouchard worked for Mr. Koerber." ECF No. 571-1 at 737 (*Koerber II*). Perjury requires that a witness have the "willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Given Westmoreland's belief that Bouchard worked for Koerber, Koerber cannot establish that the government suborned perjury from Westmoreland when the latter testified that he had invested with Koerber.

Ground 6: Sixth Amendment Violation Based on Prosecutors' Alleged Use of Privileged Material

Koerber contends that his Sixth Amendment rights were violated when prosecutors used a privileged letter written by Koerber.

Once again, Koerber is procedurally barred from raising this issue here because he should have raised this issue in a direct appeal, and he cannot show cause or prejudice excusing his failure to do so. *Cook*, 997 F.2d at 1320.

Koerber's contentions are also without merit. Although the government did use this letter in securing the first indictment, ECF No. 1 (*Koerber I*), there is no

21

evidence the government used this letter after a court ruled that it was privileged and that Koerber had not waived his privilege. ECF No. 165 (*Koerber I*). In that order, the court specifically noted that Koerber "has not presented any evidence that the government was purposely" trying to "interfere with his privilege in its interactions with his attorneys and related persons." *Id*. at 1, n. 1. In *Koerber II*, Koerber moved to dismiss the indictment on the ground that the government had relied on his privileged letter, but the court denied his motion, concluding that "Koerber has not shown how the United States' previous reliance on that letter (before it was deemed privileged) constituted a Fifth or Sixth Amendment violation," and that "it does not appear to the court that the United States engaged in any misconduct related to the letter." ECF No. 140 at 22–23 (*Koerber II*). Koerber filed successive motions concerning this letter, and in every instance, the court concluded that the government did not act improperly and that Koerber's rights had not been violated. ECF No. 143 at 9 (*Koerber II*); ECF No. 432 at 4–5 (*Koerber II*). Even if Koerber could raise this issue here, he fails to establish any violation of his Sixth Amendment rights.

Ground 7: Fifth Amendment Violation Based on Withholding of *Brady* Material

Koerber contends that the government violated his Fifth Amendment Due Process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when it allegedly

suppressed exculpatory and impeachment evidence. Specifically, Koerber's claim relates to financial documents and audio and video recordings on 27 discs. These discs were apparently lost by a third-party vendor prior to trial, but the government eventually found some of the recordings contained on these discs and produced them to Koerber. ECF No. 660 at 674–84, 691 (*Koerber II*).

Koerber's claim fails both because it is procedurally barred and on the merits. It is barred because this issue should have been raised on direct appeal, and Koerber cannot establish cause or prejudice to overcome the procedural bar. *Cook*, 997 F.2d at 1320l. *See United States v. Fabiano*, 42 F. App'x 408, 412 (10th Cir. 2002) ("[Defendant] brings a *Brady* claim that is independent of his claim that his attorney provided ineffective assistance, he did not pursue the claim in his direct appeal, and has therefore procedurally defaulted it."). Koerber's appellate counsel was not ineffective for declining to pursue this claim. *See Banks*, 54 F.3d at 1515.

Koerber's claim fails on the merits because the record does not show that government intentionally suppressed the 27 discs, as Koerber alleges; rather, they were lost by a third-party vendor in the process of cataloguing evidence. ECF No. 660 at 691 (*Koerber II*). And, contrary to Koerber's allegations, the record establishes that government did, in fact, produce to Koerber some of the missing audio recordings, apparently upon discovering backups. ECF No. 660 at 674–84 (*Koerber II*). It simply appears that Koerber and his counsel did not realize the

recordings had been produced. *Id*. at 698–702. Thus, Koerber cannot establish a *Brady* violation.

> Ground 8: Fifth Amendment Violation Based on the Government's *Ex Parte* Interviews of Koerber

Koerber contends that his due process rights were violated when prosecutors and investigators conducted two *ex parte* interviews of him in February 2009 and when the court later admitted into evidence statements he made in those interviews. The *Koerber I* court concluded that the interviews should be suppressed, but in *Koerber II*, the court concluded that issue preclusion did not apply and determined that suppression was not warranted. *Koerber*, 10 F.4th at 1097.

Koerber raised this issue with the district court and on appeal. *Id*. at 1099–1104. Koerber's trial and appellate counsel both raised the specific argument Koerber now makes, that his statements from these interviews should have been suppressed under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *Koerber*, 10 F.4th 1083, Pet'r's Br. 31; ECF No. 394 (*Koerber II*). In both instances, the courts concluded that suppression was not warranted. *Koerber*, 10 F.4th at 1099–1104. That the Tenth Circuit did not specifically cite *Accardi* is immaterial; its analysis comprehensively addressed Koerber's claim that the evidence should have been suppressed. *Id*. at 1103–04. Because this issue was presented to, and fully

24

addressed by, both the District Court and the Tenth Circuit, and both courts denied

Koerber's claims, Koerber cannot raise this issue again in these proceedings.

*Abernathy v. Wandes*, 713 F.3d 538, 549 (10th Cir. 2013) ("the law-of-the-case

doctrine typically precludes consideration of issues in a § 2255 proceeding that

were previously decided on direct appeal").

Ground 9: Koerber Received Ineffective Assistance of Appellate Counsel

Koerber contends that he received ineffective assistance of appellate counsel

because appellate counsel did not raise the following issues on direct appeal: (1)

the choice of counsel issue addressed in Ground 1; (2) the privileged material issue

addressed in Ground 6; and (3) the *Brady* issue raise addressed in Ground 7.

"[T]he Sixth Amendment does not require an attorney to raise every

nonfrivolous issue on appeal." *Banks*, 54 F.3d at 1515. Therefore, in evaluating an

ineffectiveness claim based on failure to raise an issue on appeal, the court

examines the merits of the omitted issue:

> If the omitted issue is so plainly meritorious that it would have been
> unreasonable to winnow it out even from an otherwise strong appeal,
> its omission may directly establish deficient performance; if the omitted
> issue has merit but is not so compelling, the case for deficient
> performance is more complicated, requiring an assessment of the issue
> relative to the rest of the appeal, and deferential consideration must be
> given to any professional judgment involved in its omission; of course,
> if the issue is meritless, its omission will not constitute deficient
> performance.

*Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).

Koerber's appellate counsel raised seven issues on appeal, attacking various elements of Koerber's trial and conviction. *Koerber*, 10 F.4th at 1099. It was within the sound discretion of appellate counsel to "winnow[] out weaker arguments on appeal and focus[] on those most likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 2667 (1986). For the reasons discussed above, the choice of counsel issue raised in Ground 1, the privileged material issue raised in Ground 6, and the *Brady* issue raised in Ground 7 are all without merit. Accordingly, appellate counsel was not ineffective for declining to raise them and instead focusing on other issues.

Koerber also contends that appellate counsel was ineffective for improperly handling two issues: (1) the speedy trial issue; and (2) the issue preclusion issue.

As to the speedy trial issue, Koerber contends that appellate counsel was ineffective because counsel argued that the period of delay was from Koerber's 2009 indictment to the 2016 dismissal without prejudice but instead should have argued that the delay was from the 2009 indictment to Koerber's 2019 sentencing. Koerber, however, cites no law, and this court is aware of none, that would support such a calculation. Case law, rather, supports the idea that a new indictment restarts the speedy trial clock. *United States v. Dixon*, 542 F. App'x 273, 278 (4th Cir. 2013) ("The filing of the superseding indictment in this case restarted the STA trial clock."); *United States v. Myers*, 666 F.3d 402, 405–06 (6th Cir. 2012) (holding

that speedy trial clocks restart upon reindictment following dismissal of prior charges without prejudice). Thus, appellate counsel was not ineffective for calculating the period of delay as running from the 2009 indictment to the 2016 dismissal.

As to issue preclusion, Koerber contends that appellate counsel did not properly argue that the court's order in *Koerber I*, suppressing Koerber's statements in the *ex parte* interviews, should have had preclusive effect in *Koerber II*. Koerber's claim is without merit for two reasons. First, he misunderstands the law of issue preclusion. Koerber contends that a final judgment is not necessary for issue preclusion, but, for the reasons the Tenth Circuit already explained, this is incorrect. *United States v. Koerber*, 10 F.4th 1083, 1102 (10th Cir. 2021). Second, appellate counsel fully and competently litigated this issue on appeal. Koerber fails to establish either that "counsel's representation fell below an objective standard of reasonableness" or that he was prejudiced by appellate counsel's representation. *Strickland*, 466 U.S. at 687–88. Thus, Koerber's claims of ineffectiveness are without merit.

Ground 10: Koerber Received Ineffective Assistance of Trial Counsel

Koerber contends that he received ineffective assistance of trial counsel.[5] Koerber asserts 18 different reasons he received ineffective assistance, grouping them under the following headings: (1) Pre-Trial Investigation and Preparation; (2) Pre-Trial Litigation; (3) Jury Selection and Trial Preparation; (4) Trial Examination and Cross-Examination; and (5) Sentencing Preparation and Litigation.

Many of the grounds Koerber asserts here are simply restatements of arguments he has already made and which this court has addressed above, including that he received ineffective assistance of trial counsel because: Nester broke her promise that Koerber would testify (Ground 3); Nester mishandled expert witnesses Dr. Terry Spencer and David Hardman (Ground 4); Nester did not adequately challenge the government's prior use of the privileged letter (Ground 6); Nester did not pursue the issue of the allegedly withheld *Brady* material (Ground 7); and Nester did not adequately pursue the issue of excluding evidence from the *ex parte* interviews (Ground 8). For the reasons stated above, these grounds are without merit.

As to the other bases Koerber raises for ineffective assistance, he spends only a few pages in total (out of a 200-page memorandum) discussing them, often

---

[5] Although claims of ineffective assistance of trial counsel can be raised on direct appeal, the Supreme Court has explained that such claims are not subject to the procedural bar. *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694, 155 L. Ed. 2d 714 (2003).

dedicating only a single sentence to each specific reason. For example, concerning jury selection, Koerber states that Nester was ineffective because she "declined to object to multiple jurors with personal relationships and potential bias related to both government and defense witnesses." Pet'r's Mem. at 197. Koerber says nothing else about this. He does not explain what the personal relationships were, what the nature of the bias was, why Nester's actions were objectively unreasonable, or how Koerber was prejudiced. *See Strickland*, 466 U.S. 687–88. Koerber makes only vague, conclusory claims of ineffective assistance and, as the Tenth Circuit has recognized, "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012). Koerber's claims of ineffective assistance of trial counsel are thus denied.

### III.

Koerber has also moved for partial summary judgment on a subset of his § 2255 claims. A motion for summary judgment is not encompassed within Rule 2(a) of the Rules Governing Section 2255 Proceedings. Koerber's motion is also duplicative of his § 2255 motion to vacate. Accordingly, and because the Court denies his § 2255 motion, the Court denies his motion for partial summary judgment as moot. *See, e.g., D'Amario v. United States*, 403 F. Supp. 2d 361, 368 n.5 (D.N.J. 2005); *United States v. Potts*, 566 F. Supp. 2d 525, 531 n.2 (N.D. Tex.

2008). And because the Court denies his motion for partial summary judgment, the Court also denies Koerber's motion to reconsider the order directing the government to respond to Koerber's motion as moot.

## IV.

A court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). As Koerber acknowledges in his motion for partial summary judgment, Grounds 1, 2, 3, 5 and 6 can be decided as a matter of law without an evidentiary hearing. Pet'r's Motion for S.J. at 1 ("[T]he record shows [these] claims warrant habeas relief as a matter of law, without further proceedings.").[6] No evidentiary hearing is required on the other grounds because they can also be decided as a matter of law and based upon the record. *See United States v. Simmonds*, 111 F.3d 737, 746 (10th Cir. 1997) ("In a § 2255 proceeding, the district court is not required to hold an evidentiary hearing on a prisoner's claims where the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.").

## V.

---

[6] Koerber's Motion for Partial Summary Judgment presents seven grounds for relief, but grounds 1–3 map onto Ground 1 in his § 2255 motion to vacate, and grounds 4, 5, 6 and 7 of the Motion for Partial Summary Judgment relate to Grounds 2, 3, 5 and 6, respectively of the § 2255 motion.

Koerber's § 2255 motion is **DENIED**. Because Koerber has not made a

substantial showing of the denial of a federal constitutional right, a certificate of

appealability will not issue. 28 U.S.C. § 2253(c).

**SO ORDERED.**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 16, 2025